**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-01190-MSK-NYW

**PAROS PROPERTIES LLC,**

    Plaintiff,

v.

**COLORADO CASUALTY INSURANCE COMPANY, and
OHIO SECURITY INSURANCE COMPANY,**

    Defendants.

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Paros") Motion For Declaratory Judgment **(# 38)**, the Defendants' ("CCIC")[1] response **(# 41)**, and Paros' reply **(# 42)**; and CCIC's Motion for Summary Judgment **(# 47)**, Paros' response **(# 51)**, and CCIC's reply **(# 59)**.

## FACTS

The operative facts of the case are largely undisputed. Paros was the owner of a commercial building located in Boulder, Colorado. It had insured that building with a policy with CCIC. In September 2013, Boulder experienced unprecedented rainfall, causing extensive

---

[1] Although Defendant Ohio Security Insurance Company is named as a party and is a movant on the Defendants' motion, there are no particular allegations against Ohio Security in the Amended Complaint, no separate discussion of its status in the parties' motion papers, and the record here indicates that the policy in question was issued by Defendant Colorado Casualty. Accordingly, the Court elects to refer to the Defendants jointly as "CCIC."

flooding, and either during the evening of September 12, 2013 or in the early morning of the following day, a violent flow of water, mud, rocks, trees, and other debris traveled down a nearby hillside, striking Paros' building. The impact of the flow knocked down a wall of the building, causing the building to partially collapse.

The CCIC policy at issue contains a "Water Exclusion Endorsement" (the "Water Exclusion"). This exclusion provides that the policy does not cover damage resulting from "flood [or] surface water," "mudslide or mudflow," or "waterborne material carried or otherwise moved by" such water. However, the Water Exclusion contains an exception: if any of these perils "results in . . . explosion," then the policy provides coverage.

Paros essentially concedes that, in ordinary circumstances, the flow of water and debris that caused the damage would fall within the Water Exclusion in the policy, resulting in a lack of coverage. But Paros contends that, in the circumstances presented here, the force of the impact with the building was so abrupt and strong, and the damage so immediately catastrophic that the impact can fairly be described as an "explosion," thus resulting in a restoration of coverage. Based on that theory, Paros filed a claim under the policy.

CCIC denied the claim, citing to the Water Exclusion. Paros then commenced this suit, asserting claims for breach of insurance contract and statutory and common-law bad faith breach of contract. Paros moves **(# 38)** for a "declaratory judgment" – essentially, a motion for summary judgment seeking a declaration that the damage at issue constitutes an "explosion" such that coverage is available under the policy. Separately, CCIC moves **(# 47)** for summary judgment on the claims against it because the damage sustained by Paros falls squarely within the Water Exclusion.

## ANALYSIS

### A. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and  enters

judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves what are essentially cross-motions for summary judgment. Ordinarily, because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

**B. CCIC's motion**

Here, the material facts are not in dispute. The issue is a legal one, requiring interpretation and application of the terms of the contract. Because the Court ultimately concludes that CCIC is entitled to summary judgment in its favor, it is expeditious to begin with that motion.

Under Colorado law, insurance polices are interpreted like any other contract. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004). The Court should attempt to give full effect to the intentions of the parties. *Id.* In the absence of clear indications of a contrary intention by the parties, the Court will typically interpret the words of the policy according to the

plain and ordinary meanings. *Greystone Constr., Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283-84 (10th Cir. 2011). The Court must also strive to read the policy as a whole, rather than reading words in isolation; should avoid adding to or deleting from provisions; and must avoid attempting to rewrite the policy in the guise of interpreting it. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Ultimately, if the Court finds that a term is ambiguous and is otherwise unable to reasonably construe it through other means, the Court should construe the term in favor of providing coverage. *Id.*

Here, there is essentially no dispute that the damage to Paros' building was the result of "flood [or] surface water," a "mudslide or mudflow," or "waterborne material carried or otherwise moved by" floodwaters or mudflow.[2] Paros' own response brief characterizes it as "an avalanche of mud, water and debris" and "a mudslide." Robert Drake, Paros' principal, states in an affidavit that the damage was caused by "a rock or a mudslide," and, even assuming

---

[2] Paros makes a brief argument that water "diverted by the hand of man" does not constitute "surface water" for purposes of determining whether a surface water exclusion applies to an insurance policy. *Citing Heller v. Fire Insurance Exchange*, 800 P.2d , 1009 (Colo. 1990). In *Heller*, the Colorado Supreme Court found that water that had been diverted onto the insured's property by man-made trenches behind the property was not "surface water" under the policy's terms, because they were "defined channels" that diverted water away from its natural direction of flow. Paros argues that "man-made parking lots, roadways, drainpipes, and culverts . . . uphill from" the property at issue here are the equivalent of the "defined channels" in *Heller*. However, the Water Exclusion in the policy expressly contemplates that. It states that "This exclusion applies regardless of whether any [flood waters or mudslide] is caused by an act of nature or otherwise caused." Thus, even damage resulting from flood waters that are caused by man-made features is excluded from coverage.

Iit is notable that in the Paros' expert, Edward Fronapfel, states merely that "the flow volume draining towards [Paros'] property <u>was impacted</u> by" certain man-made structures. (Emphasis added). It is clear from Mr. Fronapfel's report that Paros' property sits at the exit of a large, naturally-occurring drainage basin (in addition to man-made features that might divert additional water into that basin). Mr. Fronapfel does not opine that the naturally-occurring flow through the drainage basin would not have produced enough water and mud flow, of its own, to cause the damage that occurred. Thus, there mere fact that <u>some</u> of the water comprising the flow may have been diverted by man-made structures does not prevent the flow from being considered "surface water" under the terms of the policy.

5

that a rock was the actual causal agent, it appears to be undisputed that the rock was "waterborne material carried or otherwise moved" by flood waters or a mudslide. Thus, it is clear that the damage to the building was, at least in the first instance, the result of perils that are excluded from coverage by the Water Exclusion.

That leaves the question of whether the "explosion" exception to that exclusion applies to restore coverage, and that question, in turn, requires an interpretation of the term "explosion." The contract offers no definition.

CCIC contends that the term "explosion" should be defined as either "a release of chemical or nuclear energy in a sudden and violent manner with the generation of high temperature and with the release of gasses" or "a violent bursting as the result of the buildup of internal pressure within a closed environment." Paros posits that the plain meaning of the term "explosion" is "a sudden and violent breaking apart of something accompanied by noise."

CCIC's position is closer to the mark – that an "explosion" necessarily requires "a bursting" of something due to a buildup of pressure within it. That definition is supported by numerous dictionaries. The most appropriate definition in the Oxford English Dictionary defines the cognate "explode" as "To **expand violently with a loud report under the influence of suddenly developed internal energ**y; . . .[t]o fly in pieces [or] burst, from a similar cause."[3] Merriam-Webster's Collegiate Dictionary offers essentially the same definition: for "explode": "to burst forth with sudden violence or noise **from internal energy,** . . . **to burst violently as a result of pressure from within**."

---

**3**     It also offers the alternative definition "to drive out with violence and sudden noise." This begins to approach Paros' tendered definition, except that Paros ignores the important propositional term "out." A sudden, violent lateral movement of an object would not typically be described as an "explosion," but a sudden, violent outward expansion of an object would.

6

The key to this definition is that the force is internal causing the object to expand outward, as compared to an implosion, where an external force causes something to collapse. Indeed, Paros' own brief lists ten different definitions for the term "explosion" or its cognates, and nine of those ten incorporate the concept of "bursting" – a term that itself implies a **rupturing or expansion from internal pressure.**

Paros' definition – which deems an explosion to be a "violent breaking apart" describes only a result, not the force that caused the result.. Consequently, it suffers from several problems.  First, Paros' recitation of the definition of the term "explosion" in various dictionaries makes clear that its chosen definition omits the commonly-reoccurring themes of "expansion" and "bursting" found in those definitions.  Second, because Paros' definition focuses only on result, not cause, it is inconsistent with how the word "explosion" is commonly used and understood and  is over inclusive.  A building destroyed by a rockslide or avalanche falling down on top of it certainly "breaks apart" violently, but few people would choose to describe such an act as an "explosion"; more likely, we would describe that building as being "crushed" or "buried."  A building that is pushed laterally off its foundation and collapsed, such as when hit by a vehicle or other lateral force could certainly break apart violently in the process, but few would say that the building "exploded"; more likely, it would be described as having been "knocked over" or "knocked down" by the force.  In common use, the term "explosion" describes a very specific kind of "breaking apart" – one in which the force causing the breaking is one that emerges from within the thing being broken, causing the thing to burst and the force to be expelled in all directions simultaneously.[4]

---

[4] Paros refers to the description of a vase "exploding" when it hit the ground.  This is a metaphor used to describe an event that has the <u>appearance</u> of an explosion – that is, debris scattered in all directions simultaneously – even though the force breaking the vase apart arose

CCIC cites to various cases that have construed the term "explosion" and, again, all define the term as having some component of outward, expansive force. *See e.g. Curley v. Old Reliable Cas. Co.*, 155 S.W.3d 711, 712 (Ark.App. 2004) ("[e]xplosion is normally understood to involve . . . rapid combustion of material [and] the sudden expansion of resulting [force]") (emphasis added). The appeals court affirmed, finding "the harm visited upon appellant's house did not fit within the common understanding of an explosion." *Id*. at 715. In *American Cas. Co. of Reading, PA v. Myrick*, 304 F.2d 179, 182-83 (5th Cir. 1962), the court explained that "the common understanding of the term 'explosion' include the notion of a bursting caused by internal force or pressure" and that "for an occurrence to constitute an explosion there must be a sudden breaking forth of a confined substance as a result of an internal force." Again, these definitions are consistent with the notion that an "explosion" necessary results from a force emerging from inside an object, causing the violent expansion and subsequent bursting of the object.

Having thus construed the policy term "explosion," all that remains is to ascertain whether Paros can come forward with sufficient evidence to demonstrate that the building at issue was destroyed by an internally-emerging force that caused it to expand and violently burst. The record does not support such a contention. Mr. Fronapfel, Paros' expert, describes the process that led to the destruction of the building as "[t]he debris laden flow impacted the south elevation of the structure, causing a sudden reaction of the wall structure," which, in turn "was then shortly followed by the progressive collapse of the building's roof's structural system." (Emphasis added.) Later in his report, Mr. Fronapfel clarifies that, upon impact, "the building split into two separate structures along a north-south wall line. The eastern portion laterally

---

externally. With regard to a car stalled on train tracks and hit by a fast-moving train, there might well be an explosion – caused by the combustion of gasoline that is ignited upon impact.

**8**

<u>displaced</u> to the northeast, while the western portion <u>laterally displaced</u> to the northwest.  The roof structure collapsed where the building separation occurred due to the sudden loss of the bearing walls."  (Emphasis added.)  This description does not describe an "explosion" as the Court has defined that term.  Mr. Fronapfel clearly describes the force causing damage to the building coming from <u>outside</u> the structure, not from internal pressure as required to be an "explosion."  Moreover, Mr. Fronapfel describes the impact as causing <u>lateral</u> forces to be brought to bear on the building, not expansive outward forces, as would occur during an explosion.

      Admittedly, Mr. Fronapfel's report does attempt to describe the incident has being "consistent with an explosion."  Mr. Fronapfel does not undertake to expressly set forth how he chooses to define the word "explosion," but he does explain that his conclusion that "the response of the structure is consistent with an explosion due to the: (1) energy transfer mechanism, (2) short duration, and (3) hazard level that were all present due to the Storm Event."  This passage suggests that Mr. Fronapfel defines the term "explosion" to arise when an "energy transfer mechanism" includes an external impact causing lateral forces on the object and when that energy is delivered to the object in a "short duration" (and apparently with some degree of "hazard level," by which Mr. Fronapfel appears to mean "catastrophic damage").  Needless to say, Mr. Fronapfel's definition of "explosion" is inconsistent with that established herein, and thus, Mr. Fronapfel's characterization of the damage as being "consistent with an explosion" under his own definition of that term is of no evidentiary significance.  It is patently clear that the forces exerted on the building did not come from within the building, that the building did not expand in response to those forces, and that it did not violently burst open as a

result of such internal forces.[5] Thus, it was not damaged by what could be termed an "explosion."

Accordingly, CCIC is entitled to summary judgment on Paros' claim of breach of insurance contract.

Paros also argues that, under Colorado law, a claim based on an insurer's bad faith handling or investigation of an insurance claim can lie even where the Court ultimately concludes that the policy provides no coverage. *See Dunn v. American Family Ins.*, 251 P.3d 1232, 1235 (Colo.App. 2010). For example, an insurer can, at least theoretically, be liable in bad faith for engaging in an unreasonable refusal to investigate a claim or gather facts, even if there is ultimately no coverage for the underlying claim. *See e.g. Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 147 n. 7 (Colo. 2007). However, the Court finds here that Paros has not demonstrated any conduct by CCIC that could constitute bad faith in the investigation or handling of Paros' claim. The crux of Paros' argument is that CCIC gave inadequate consideration to Paros' contention that coverage was available under the "explosion" exception in the policy: that it did not investigate the property to ascertain whether the damage could be said to result from an "explosion," and did not obtain a legal opinion as to whether a claim premised on the "explosion" exception was colorable. The Court finds that, as a matter of law,

---

[5]   Paros makes an abbreviated effort to argue that certain photographs of the building show signs of walls bulged outwards, thus suggestion some degree of expansion. Paros supports the argument by attaching pictures with arrows and labels reading "outward explosion" on them, and argues that the actual cause of the damage was "the impact of mud, water, and debris <u>on the interior side of the walls</u>, leading to an *explosion* resulting from the pressure <u>originating from within the structure</u>." (Underlining added, italics in original.) This argument is not predicated on any analysis of a witness attesting to evidence of expansion or any other evidence, and it is clearly inconsistent with Paros' own expert's description of the damage as resulting from an external impact and lateral displacement of the walls.

In any event, even if the Court were to conclude that the building was damaged by an "explosion," the Court agrees with

these acts do not constitute bad faith.  The definition of the word "explosion" is so well-understood and in common use that no reasonable insurer would have entertained the notion that a building destroyed in a mudslide could nevertheless be said to be covered under an "explosion" exception.

Accordingly, CCIC is entitled to summary judgment on Paros' claims in their entirety. The Court need not reach Paros' motion.

## CONCLUSION

For the foregoing reasons, Paros' Motion For Declaratory Judgment **(# 38)** is **DENIED AS MOOT**.  The Defendants' Motion for Summary Judgment **(# 47)** is **GRANTED**, and the Clerk of the Court shall enter summary judgment in favor of the Defendants.

**Dated this 2d day of September, 2015.**

BY THE COURT:

_/s/ Marcia S. Krieger_

**Marcia S. Krieger**
**Chief United States District Judge**